Thomas Dickens, J.
A sole issue involving the alleged loss of the right to appeal, which defendant attributes to the impropriety of one of his assigned attorneys, who had considered it to be good strategy not to appeal in order to avoid the hazardous danger of a retrial but without having told defendant about it, has been remanded by a directive from the Court of Appeals (21 N Y 2d 138) to the Supreme Court, County of Bronx, for a hearing on, and for an answer to, the following substantial question: Was defendant deprived of his right to take an appeal from the *143 judgment of conviction, because of the strategy employed by one of his attorneys, such strategy having been employed without defendant’s knowledge and/or consent?
The pros and cons of the evidence produced at the hearing seem to favor a negative answer to the foregoing query.
At the hearing, defendant testified that, in 1950, he was convicted of the crime of murder in the second degree (the indictment had charged murder in the first degree), and that he was subsequently sentenced as a second felony offender for a term of 50 years to life (in 1960 this sentence was reduced to from 30 years to life). He testified also that in 1951 he first learned of a notice of appeal from an inmate who was then working in the State library. He further testified that he had had no conversation with any one of his assigned counsel about an appeal. He asserted that he had known nothing of the right to appeal until 1951 when he then read in the Law Journal (to which the inmate had called his attention) that his attorneys and the District Attorney had moved to have his appeal dismissed.
He thereupon wrote a letter, each, to the District Attorney, to Judge Peck, and to Mr. Morand, one of his assigned counsel, in an effort to get the minutes of his trial. His efforts proved of no avail.
Mr. Richard 0. Wilson testified that he was one of defendant’s assigned counsel in 1950 at the time of defendant’s conviction, and that he had no independent recollection regarding a discussion at that time with defendant on the subject of an appeal.
Mr. Delaggi, another of the defense counsel, is dead.
Mr. Edward V. Morand, the third of the assigned counsel, testified that the decision not to appeal was arrived at by him and the two associate counsel. Their decision was later imparted to defendant and defendant concurred in it. The reason given for following such course was that defendant would become susceptible to execution should he be convicted at a retrial on the original charge of first degree murder. Mr. Morand was very emphatic in his declaration that the question of appeal was discussed with defendant.
This point of view, as testified to by Mr. Morand regarding the advisability of taking a hazardous appeal, has a strong parallel reflection in what the court says on a similar subject in People v. Buck (6 A D 2d 528, 529-530):
“ Where there is a conviction for a felony murder, and a sentence of less than death is imposed, it may well be the more prudent course of judgment to waive an appeal rather than risk the possibility of a death sentence on a second conviction. We *144 mention this merely to indicate that the failure of either counsel assigned to take an appeal was not, ipso facto, a denial of due process or a violation of appellant’s constitutional rights.” (See, also, enlightening review of various high authorities on the question of appeal by a defendant, in People v. Thomas, 48 Misc 2d 100, citing among those high authorities, People v. Hairston, 10 N Y 2d 92.)
The long and short of all the evidence adduced convinces me that defendant was apprised of his right to appeal by counsel at or about the time when the verdict was rendered. I further find that defendant, when informed by defense counsel of the strategy not to appeal for the reason aforementioned, agreed to forego the right to appeal. Consequently, I conclude that defendant’s alleged grievance is groundless.
In sum then, I hold that defendant was aware of the strategy ' employed by counsel and that he either acquiesced in, or consented to, the adoption of such strategy.